UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

M. MOIN MASOODI                                               CIVIL ACTION

VERSUS                                                        NO.  10-807

LOCKHEED MARTIN CORPORATION                                   SECTION  "N"  (1)

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec. Doc. 62), filed by Defendant

Lockheed Martin Corporation ("LMC").  This motion is opposed. (See Rec. Doc. 73). Subsequent

replies were filed by each of the parties.  (See Rec. Docs. 76 and 79).  After considering the

memoranda of the parties, the exhibits attached thereto, and the applicable law, the Court grants this

motion in its entirety.

## I.      BACKGROUND

Plaintiff M. Moin Masoodi is a Muslim who was born in India and was moved shortly after

birth to Pakistan.  He lived in Pakistan until after high school when he moved to the United States.

(Exhibit 3 to Rec. Doc. 73, ¶1; Rec. Doc. 73, p. 1).  Plaintiff has been employed by LMC as a

Design Engineer since August 1981.  (See Rec. Doc. 1, ¶4).  At that time, Plaintiff was hired as a

Design Engineer, labor grade 43.  (Exhibit 42 to Rec. Doc. 62, p. 9)[1]. Five years later, Plaintiff was

---

[1]      At that time, labor grades were 41, 43, 45, 47, and 49. These were later reclassified as E-3, E-4, and E-5.  (Exhibit 42 to Rec. Doc. 62, pp. 9-11).

promoted to Senior Design Engineer, labor grade 45. (Exhibit 42 to Rec. Doc. 62, pp. 9, 26).  In 1999, Plaintiff was promoted to Staff Design Engineer, labor grade 47, equivalent to today's labor grade, E-4.  (Exhibit 42 to Rec. Doc. 62, pp. 10-11).  Today, Plaintiff is still employed by LMC in this same position and labor grade in the propulsion/electrical group of the Engineering Department. (Exhibit 42 to Rec. Doc. 62, pp. 12-13). Since 2002, Plaintiff's annual performance appraisals have rated him as a "Successful Contributor".[2] (Exhibit 42, pp. 83-89; Exhibit 44).

In 2006, Plaintiff filed an EEOC charge against LMC alleging race, religious, and national origin discrimination.  (Exhibit 45 to Rec. Doc. 62). However, Plaintiff withdrew the charge before LMC was able to respond to it. (Exhibit 42 to Rec. Doc. 62, p. 102).[3]

In 2008, LMC advised of an opening in the position of Design Engineer Manager over the propulsion and electrical group in the Engineering Department.  (Exhibit 32 to Rec. Doc. 62). This is a management position. Four individuals applied for it: Mark Javery (BM), Ken Barkman (WM), Plaintiff, and Glenn Merritt (BM).[4] (Exhibit 17 to Rec. Doc. 62). Javery, Barkman, and Plaintiff met the technical requirements and were set for interviews to determine if they could handle the management aspects of the position. LMC conducted the interviews under a process it called the "Full Spectrum Leadership Model" to determine management capabilities.  (Exhibits 9, 17, 47, and 48 to Rec. Doc. 62).

A panel was assembled to interview the three contenders and select someone for the

---

[2]     The assessment possibilities are Exceptional Contributor, High Contributor, Successful Contributor, Basic Contributor and Unsatisfactory Contributor.  (Exhibit 42 to Rec. Doc. 62, 83; Exhibit 44 to Rec. Doc. 62).

[3]     Plaintiff contends that he withdrew the charge because of certain promises made to him by a LMC manager. (Exhibit 42 to Rec. Doc. 62, p. 138).

[4]     Merritt was disqualified as not meeting the technical requirements of the job. (Exhibit 9 to Rec. Doc. 62).

position. (Exhibits 9 and 17 to Rec. Doc. 62). The panel included Tomson Lem (Asian American male), Deborah Brown (BF), Robert Marthouse (WM), Donald Tracy (WM), and Richard Smith (WM).  (Exhibits 9, 17, 28-31 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, pp. 118-119). The three applicants were provided sample questions in advance of their interviews and were told they would be judged on the Full Spectrum Leadership model.  (Exhibits 9, 17, 47, and 48 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, pp. 112-114). The panel interviewed all three individuals and selected Mark Javery (BM) for the promotion.  (Exhibits 9, 17, 28-31, 34 to Rec. Doc. 62).

On July 21, 2009, Plaintiff filed an EEOC Charge of Discrimination, alleging discrimination on the basis of Race (Asian); Religion (Muslim); Age; and National Origin (Pakistani) as to the selection of Javery for the Design Engineer Manager position on September 30, 2008.  (Exhibit 1 to Rec. Doc. 62). Plaintiff's charge cited the "earliest" and "latest" date of alleged discrimination as September 30, 2008, the date of the panel interviews.  (Exhibit 1 to Rec. Doc. 62).

Plaintiff's Complaint, which was filed on March 5, 2010 (Rec. Doc. 1), asserts various claims, some of which were neither the subject of nor mentioned in the July 2009 Charge of Discrimination. Plaintiff alleges claims of retaliation.  He avers that he filed an EEOC charge in which he alleged "failure to promote on the basis of his race, age, religion, and national origin *and retaliation for having filed [a] 2006 complaint.*" (Rec. Doc. 1, ¶ 8, emphasis added).  In the next paragraph of the Complaint, Plaintiff claims that he was denied a promotion in September 2008 "on the basis of [his] race (Asian), religion (Muslim), national origin (Pakistani)", and in retaliation for filing an EEOC charge complaining of Title VII discrimination.  (Rec. Doc. 1, ¶9).  In his

3

Complaint, Plaintiff also alleges that, "[b]eginning in September 2001[5], [he] was subjected to unequal terms and conditions of his employment with regard to high visibility management job assignments and was given lower overall performance ratings than similarly situated Caucasian-American co-workers with similar scores." (Rec. Doc. 1, ¶4).  He also alleges that he was "paid less than similarly situated Caucasian-American co-workers with both similar experience and skills and less experience and skills."  (*Id.*).  Plaintiff does not allege in his Complaint that any actions were taken against him because of his age.

Based on the allegation in the 2009 Charge of Discrimination filed by Plaintiff, LMC filed a Motion to Dismiss in March of 2010 (Rec. Doc. 6), arguing that Plaintiff had failed to state a claim for relief for certain claims raised in his Complaint but not in the July 2009 Charge of Discrimination.  In opposition to LMC's Motion to Dismiss, Plaintiff acknowledged that his Complaint alleged actions other than the September 30, 2008 failure to promote claim; however, Plaintiff explained that he had "made a separate charge for retaliation in early March 2010 and has requested a right-to-sue from the investigator..."  (Rec. Doc. 8).   By the time the Court addressed this pending motion, Plaintiff had supplemented his previously-filed Opposition with the second, separate right-to-sue notice and Charge of Discrimination.  (See Rec. Doc. 16, and supplemental attachment to Rec. Doc. 8, at Rec. Doc. 8-2).  This second, separate right-to-sue notice  was issued

---

[5]         Plaintiff clarifies in the Opposition to this motion that "[s]ince the attack on the World Trade Center in 2001 by Muslim extremists, [he] has worked at [LMC], daily, amid a workforce which can be fairly described as being generally hostile toward Muslims."  (Rec. Doc. 73, p. 1). As an example of this, Plaintiff references a speech given by U.S. Senator David Vitter wherein he stated, "call me old fashioned, but I certainly don't want [NASA's] primary purpose to be outreach to Muslim countries to make them feel good…" (Exhibit 1 to Rec. Doc. 73).  Plaintiff claims that at that point in the speech, "the crowd's applause dramatically and exponentially increased." (Rec. Doc. 73, n. 1).

on May 4, 2010, in response to an April 29, 2010 Charge of Discrimination[6].  (Exhibit 2 to Rec. Doc. 62).  In light of the new EEOC charge, the Court denied LMC's Motion to Dismiss.  (Rec. Doc. 17).  However, Plaintiff never amended his Complaint to reference his 2010 Charge or the right-to-sue notice received in connection therewith.  (See Rec. Doc. 15-2).  After engaging in discovery, LMC has now filed the instant motion.

## II.  DISCUSSION

### A.  Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the

---

[6]     This Charge of Discrimination asserts retaliation and specifically states:

I was hired by the Respondent on August 26, 1981, as a design engineer.  I was denied a promotion on March 29, 2010 that would have given me high management visibility assignments that are essential for future advancements in this company.  I was offered an assignment in June, 2006 as an inducement to dismiss a charge I had filed with the EEOC.  I accepted the assignment because the vice president of the company assured me that I would be treated fairly and given the high visibility assignments.  I dismissed my EEOC charge; however, the promised Staff engineer position was not forthcoming.

I have been denied several promotions since June, 2006, even though I was clearly the most qualified applicant and had more experience than those hired.

I believe I have been retaliated against for filing the EEOC charge in June, 2006, in violation of the Civil Rights Act of 1964, as amended.

(Exhibit 2 to Rec. Doc. 62).  This Charge also alleges a continuing action from June 30, 2000 to March 2, 2010. (*Id.*).

governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." See *id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary

6

judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

## B.    Discussion

The Court addresses the aspects of Plaintiff's claims separately, beginning with the allegations raised in Plaintiff's most-recent EEOC Charge.  Before doing so, however, the Court considers whether such claims are validly before it, based on the fact that Plaintiff never amended his Complaint to reference his 2010 Charge or the right-to-sue notice received in connection therewith.  (See Rec. Doc. 15-2).[7]

---

[7]    For the reasons that follow, LMC argues that there is no factual support for the assertions Plaintiff made, under oath, in his April 29, 2010 EEOC Charge. LMC surmises that Plaintiff made these allegation in order to defeat the then-pending Motion to Dismiss. LMC notes that the allegations were so fraudulent that Plaintiff chose not to amend his lawsuit to reference the Charge or the May 5, 2010 right-to-sue letter. LMC asks this Court to "revisit the issues raised in the original 12(b) Motion and dismiss all of Plaintiff's claims other than his claim of a non-promotion in September 2008...".  LMC also requests that this Court award costs and attorney's fees to it for having to conduct discovery and file the instant motion to defeat these frivolous claims, which it claims all would

Once a right-to-sue letter has been issued by the EEOC, the charging party has 90 days from its receipt within which to file suit. 42 U.S.C. § 2000e-5(f)(1);  *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300 (5th Cir.1980).  Here, Plaintiff's Complaint was filed prior to the 2010 Charge of Discrimination and the receipt of the right-to-sue letter.

The filing of a timely charge of discrimination with the EEOC and/or the compliance with the 90-day filing period are not prerequisites to a federal court's subject matter jurisdiction under Title VII. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Coke v. General Adjustment Bureau*, 640 F.2d 584, 592 n. 15 (5th Cir.1981); *Henry v. Gulf Coast Mosquito Control Com'n*, 645 F. Supp. 1447, 1452 (S.D. Miss. 1986).  The compliance with the 90-day filing period is viewed as a statutory precondition to the maintenance of any action under Title VII, and the failure to comply with the ninety day period entitles the defendant to a defense analogous to a statute of limitations. *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069-1070 (5th Cir.1981);  *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 562 (5th Cir.1983). Since the issuance of a right-to-sue letter is not a jurisdictional requirement, the mere failure of a party to allege the actual issuance of a right-to-sue letter will not prevent the Court from having jurisdiction over the subject matter.   Further, the Court is permitted to even allow a plaintiff to amend his complaint outside of the 90-day limit.  *Henry*, 645 F. Supp. at 1452; see also *Gooding v. Warner-Lambert Co.*, 744 F.2d 354 (3rd Cir.1984).   Here, however, Plaintiff has never sought leave to amend his Complaint, and trial is in one month. (See Rec. Doc. 25). Thus, it is this Court's opinion that the

---

have been dismissed pursuant to the Motion to Dismiss, but for the "inaccurate" April 2010 charge.  (See Rec. Doc. 62, p. 20).

claims in the 2010 EEOC Charge are not properly before it.[8]  Having failed to amend his Complaint,

the Court concludes that Plaintiff is now time-barred from pursuing such claims in federal court.

However, even if the claims were not time-barred and even if the Court were to consider them, such

claims alleged in Plaintiff's 2010 Charge would be dismissed on the merits for the reasons that

follow.

### 1.      Allegations in April 29, 2010 Charge

#### a.      The Denial of the March 29, 2010 Promotion, as Alleged in the April 29, 2010 Charge of Discrimination

LMC asserts that the allegation that Plaintiff was denied a "promotion on March 29, 2010"

was false. (Exhibit 5 to Rec. Doc. 62).   In a May 13, 2010 letter, counsel for LMC advised

Plaintiff's counsel of this fact and requested that he advise the Court of its falsity. (Exhibit 4 to Rec.

Doc. 62). Plaintiff's counsel responded to the letter on May 24, 2010, stating, "[i]n accordance with

the information presented Mr. Masoodi will not pursue any promotion claims." (Exhibit 6 to Rec.

Doc. 62).  Unfortunately, no one notified the Court of this development, and on  June 10, 2010, the

---

[8]      The Court notes that in its June 10, 2010 Order and Reasons, it stated as follows:

> Here, it is undisputed that, as of the date of the filing of
> the Complaint, Plaintiff had neither filed a second EEOC charge,
> nor received a right-to-sue letter therefor. Thus, as of that date,
> Plaintiff had not complied with Title VII's exhaustion requirement
> (as to the claims other than the September 30, 2008 promotion), and her Title
> VII claims other than the claim for the September 30,
> 2008 non-promotion were subject to dismissal without prejudice on that ground.
> See Pinkard, 678 F.2d at 1218. However, *by supplementing the record in this*
> *case with his second EEOC charge and his right-to-sue letter (while the instant*
> *motion to dismiss was pending), Plaintiff has cured those defects (at least for the*
> *claims mentioned in his second Charge).*

(Rec. Doc. 17, pp. 7-8, *emphasis added*). To be clear, the Court was referring to Plaintiff's exhaustion obligations,
and not Plaintiff's statutory obligations, of which the Court is not required to inform Plaintiff.  Thus, after filing his
2010 EEOC Charge and receiving the right-to-sue letter associated therewith, Plaintiff was compelled to amend his
complaint within 90 days of receiving the right-to-sue letter or face having his civil cause of action expire under the
prescribed statute of limitations for Title VII actions.

Court denied LMC's Motion to Dismiss (Rec. Doc. 17), and in so doing, specifically referred to Plaintiff's April 29, 2010 charge and cited the language that Plaintiff had been denied a promotion on March 29, 2010 in retaliation for having filed an earlier EEOC Charge.

In the context of this motion, Plaintiff now alleges/clarifies that he was *retaliated against* in March 2010 and not named contact person[9] because he filed an EEOC Charge in July 2006. (Exhibits 2 and 38 to Rec. Doc. 62).  LMC argues that there is no proximity in time between these two events allowing for the establishment of a causal link. Thus, LMC contends that Plaintiff cannot prove the required causal link and cannot prove a prima facie case of retaliation as to this allegation.

As for Plaintiff's likening of not being named contact person (on *some* but not *all* occasions) to the denial of a promotion, the Court agrees with LMC that such instances should NOT be interpreted as denials of "promotions."  It is well established that the denial of a promotion is an actionable adverse employment action. See *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir.2000).  "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."  *Id.* It is true that certain circumstances may be equivalent to the denial of a promotion, and thus would qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits; if the position sought was objectively better, then the failure to award the position to the plaintiff could constitute an adverse employment action. *Alvarado v. Texas Rangers*, 492 F.3d 605, 614 (5th Cir.2007); see *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999).

---

[9]   In discovery, Plaintiff clarified that by "promotion," he meant being named the contact person in Mark Javery's absence on March 3 and March 17, 2010. (Exhibit 38 to Rec. Doc. 62).  LMC argues that the e-mails reflecting these contact designations show that they should not be interpreted as promotions. (Exhibits 39 and 40 to Rec. Doc. 62). LMC argues that they should not even qualify as adverse employment actions.  LMC also notes that in February 2010, Javery named Plaintiff as a contact person in his absence. (Exhibit 41 to Rec. Doc. 62). Indeed, Javery appointed Plaintiff in this capacity on *several* occasions.  (Exhibit 20 to Rec. Doc. 62).

10

In determining whether the certain position is objectively better, a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious. *Alvarado*, 492 F.3d at 614. See also *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2 d 132, 136 (7th Cir. 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (C.A.7 1994) (a "bruised ego" is not enough); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (C.A.6 1996) (demotion without change in pay, benefits, duties or prestige insufficient) and *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (C.A.8 1994) (reassignment to more inconvenient job insufficient). This is an objective inquiry. "[N]either the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." *Sandres v. State of La.*, 2010 WL 3782122 (M.D. La. Sept. 3, 2010) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283-84 (5th Cir.2004)).

Here, Plaintiff has not shown that not naming him contact person in Javery's absence in March 2010 amounts to a denial of a promotion. Plaintiff has not offered evidence showing that the being named contact person in an acting manager's absence paid more, required fewer work hours, or had other tangible benefits such that it could objectively be considered as a promotion. Indeed,

11

such a temporary designation did not result in a pay raise; it only named a particular individual as a "contact" person in the actual manager's absence. Further, this temporary designation was not made after a competitive selection process; it was merely decided by the manager and made known in an email. (Exhibits 39 and 40 to Rec. Doc. 62). This clearly does not qualify as an adverse employment action for purposes of Title VII.

As for Plaintiff's clarification that he was *retaliated against* in March 2010 and not named contact person because he filed an EEOC Charge in July 2006 (See Exhibits 2 and 38 to Rec. Doc. 62), aside from such not being an adverse employment action, the Court agrees with LMC that there is no proximity in time between these two events, which would allow for the establishment of a causal link. Here, there is insufficient temporal proximity to support an inference of a causal link between Plaintiff's EEOC Charge in 2006 and the decision to not appoint Plaintiff as contact person in 2010 - four years later. See *Cyprow v. Texas Dept. of Public Safety*, 2009 WL 1743826, *25 (S.D. Tex. June 17, 2009). Plaintiff's argument is also belied by the fact that in February 2010, Javery named Plaintiff as a contact person in his absence. (Exhibit 41 to Rec. Doc. 62). Indeed, Javery appointed Plaintiff in this capacity on several occasions. (See Exhibit 20 to Rec. Doc. 62). Thus, even if this claim were not time-barred, it would nonetheless be dismissed.

> **b. The Promise of the Position of Staff Engineer in Exchange for the Dismissal of his 2006 EEOC Charge, as Alleged in the April 29, 2010 Charge of Discrimination**

As part of his retaliation claim in the April 29, 2010 Charge, Plaintiff claims:

> I was offered an assignment in June, 2006 as an inducement to dismiss a charge I had filed with the EEOC. I accepted the assignment because the vice president of the company assured me that I would be treated fairly and given the high visibility assignments. I dismissed my EEOC charge; however, the promised Staff engineer position was not forthcoming.

(Exhibit 2 to Rec. Doc. 62).

However, as LMC points out, Plaintiff is currently a Staff Engineer and he has held that position since 1999. (Exhibits 1 and 9 to Rec. Doc. 62; Exhibit 37 to Rec. Doc. 62, No. 11; Exhibit 42 to Rec. Doc. 62, pp. 10-12). Indeed, the only job above the position of Staff Engineer in the Propulsion/Electrical group is Design Engineer Manager,  which is the position Plaintiff applied for in September 2008. Thus, this claim is without merit, and were it not time-barred, it would be dismissed for this reason.

> **c.    The Denial of "Several Promotions Since June, 2006", as Alleged in the April 29, 2010 Charge of Discrimination**

As LMC notes, although  Plaintiff alleges the denial of several promotions since 2006 in his April 29, 2010 EEOC Charge, the only failure to promote claim in his Complaint relates to the September 2008 promotion to Design Engineer Manager.  (Rec. Doc. 1, ¶ 6).  Thus, claims of any other promotion denials are not properly before the Court.

However, in the event this Court considers them (which it does only to show that dismissal is proper on *several* grounds), LMC asserts that Plaintiff has failed to identify any adverse employment action which actually occurred within 300 days of filing his April 29, 2010 charge.[10]  LMC asserts that the September 2008 promotion, like the other alleged non-promotions going back to 2006, are all outside of the 300 day period.  Because Title VII limits Plaintiff to alleged retaliatory acts within 300 days of the filing of his charge and because he has failed to identify any actual adverse employment action during that time period, the Court agrees with LMC that Plaintiff's retaliation claim must be dismissed because it is procedurally defective.

---

[10]       A claimant must file a Title VII discrimination claim with the EEOC within 300 days of the alleged discriminatory act. See *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir.2003).

In addressing the merits of this claim, LMC explains that it offers two types of promotions: (1) competitive promotions, and (2) growth promotions. (Exhibit 9 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, p. 30). A "competitive promotion" is an upward change in level within the same occupational structure (i.e., a promotion from Staff Design Engineer to Design Engineer Manager). (Exhibit 9 to Rec. Doc. 62). A "competitive promotion" is advertised through a requisition (setting out the requirements of the job), which is posted on LMC's internal and external website for all to see. (Exhibits 9 and 32 to Rec. Doc. 62). It requires that employees submit a resume, apply for the position, and undergo an interview selection process. (Exhibit 9 to Rec. Doc. 62).

A "growth promotion", on the other hand, refers to a promotion from one Labor Grade to a higher Labor Grade, while retaining the same job. (Exhibit 9 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, p. 28). Thus, LMC infers that Plaintiff's allegation in his April 29, 2010 EEOC Charge that he was denied promotions since 2006, even though he was the "most qualified applicant" and had "more experience than those hired", can only have relevance to the "competitive promotion" process where he would be *in competition* with others who applied for the promotion. LMC asserts that the allegation in his Charge would make no sense in the context of a "growth promotion" where there is no competition with another applicant.  This Court agrees with this assessment.

It is undisputed that between January 1, 2006 and April 1, 2010, Plaintiff only applied for *one* "competitive promotion": the Design Engineer Manager position in September 2008. (Exhibit 9 to Rec. Doc. 62; Exhibit 37 to Rec. Doc. 62, No. 8; Exhibit 42 to Rec. Doc. 62, p. 100).

In opposition, Plaintiff claims that LMC denied him a raise for the first time in 28 years after he "filed his EEOC charges."  (Rec. Doc. 73, p. 19). Plaintiffs asserts that this further impacted his pension and social security input, and excluded him from working on Heavy Lift Vehicle ("HLV")

production, which he claims will lead to imminent unemployment when the shuttle program ends in March. (Rec. Doc. 73, p. 19).  Plaintiff cites his own sworn declaration to support his assertion that he "was the only one on the team from Michoud who knew how to build the 3D model and layout/sketches on the computer (CADDS) and was with the propulsion design group for twenty-nine years." (Exhibit 3 to Rec. Doc. 73).  Essentially, Plaintiff argues that, after his complaints, he received no appointments to be "temporary" acting manager. Plaintiff asserts that such appointments are an important criterion used in promoting employees to management positions and that being eliminated from the pool for such appointment takes an individual out of the running in the promotion process.

Plaintiff attempts to clarify that in his 2009 EEOC Charge[11], he was addressing "all types of promotions, including growth, competitive, acting manager, whether appointed or temporary." (Rec. Doc. 73, p. 23; Rec. Doc. 79, p. 5).[12]  Plaintiff explains, "[b]ecause there is not a lot of room to write the details of all promotions on the EEOC form, [Plaintiff]'s  statement was somewhat generic to encompass all types of promotions." *Id.*  Plaintiff claims to have  pointed this out to the EEOC investigator, who allegedly told him that he would be allowed to supplement the facts by e-mail. This email was sent on Monday, September 28, 2009 at 5:24 pm to Mr. Hoyt Baugh at the EEOC. (Exhibit 18 to Rec. Doc. 73). Even *if* Plaintiff's Charge was meant to encompass all types of promotions (as alleged by Plaintiff), this claim fails.

For the reasons stated *supra*, the Court finds that not naming person as a contact person in

---

[11]     Plaintiff's 2009 Charge clearly addresses only the September 2008 promotion denial.

[12]     Indeed, the Court is under the impression that the argument regarding Plaintiff's claim encompassing all types of promotions actually applies to the 2010 charge, which references "promotion" more generically than does the 2009 Charge.

a manager's absence (i.e., "temporary acting manager", as Plaintiff calls it) is not an adverse employment action.

Plaintiff's claims relating to the only competitive promotion for which he applied since 2006 (i.e., the Design Engineer Manager position in September 2008) are addressed *infra*.

Last, as for Plaintiff's claims regarding "growth" promotions, the evidence before the Court establishes that there were no "growth promotions" in the Engineering Department where Plaintiff works in 2008, 2009, or 2010.  (Exhibits 5 and 9 to Rec. Doc. 62).  Further, there have been no "growth promotions" from E-4 to E-5 in the Propulsion and Electrical group (Plaintiff's group), since January 1, 2006. (Exhibit 9 to Rec. Doc. 62).  Thus, for all these reasons, if this claim was not time-barred, it would be dismissed.

>     **d.      Plaintiff's Allegation that He Was Subjected to Unequal Terms and Conditions of His Employment with Regard to High Visibility Management Job Assignments**

Plaintiff alleges in his Complaint that he "was subjected to unequal terms and conditions of his employment with regard to high visibility management job assignments."[13] (Rec. Doc. 1, ¶4). Plaintiff asserts that "high visibility" job assignments include being given a delegation of authority (i.e., being named a contact person) or being placed in charge of a group or department in the manager's absence.[14] (Exhibit 36 to Rec. Doc. 62, No. 1; Exhibit 42, p. 67).

---

[13]      Plaintiff referenced "high visibility assignments" in his April 29, 2010 Charge of Discrimination. (Exhibit 2 to Rec. Doc. 61).

[14]      Plaintiff refers to this delegation of authority to be "temporary acting" manager. (Exhibit 42 to Rec. Doc. 62, pp. 44-45). Plaintiff explains that being delegated as a temporary acting manager is an important criterion used in promoting employees to management positions. (Exhibit 3 to Rec. Doc. 73). Plaintiff asserts that such designations, and working above grade, are regarded as a vote of confidence.  On the other hand, Plaintiff claims that being eliminated from the pool and being denied opportunities to work as "temporary acting" manager is considered a vote of no confidence. *Id.* Plaintiffs contends that "[t]he distinction of being chosen to work as acting manager is such an important part of the promotion process that being removed from such assignments would deter

Plaintiff also explains that this includes recognition as a Certified Professional Engineer ("CPE") for a particular process and being designated to work on high profile projects.   (Exhibit 42 to Rec. Doc. 62, pp. 56-57).  It also involves being named the "Task Lead" or "Team Lead" on a project and being named contact person for vendors.  (Exhibit 42 to Rec. Doc. 62, pp. 47-48). LMC notes that Plaintiff has been given *all* of these high visibility assignments on occasion. In his withdrawn 2006 EEOC Charge, he admitted being appointed "Acting Design Group Manager" in 2005 and 2006. [15] (Exhibit 45 to Rec. Doc. 62). LMC further notes that Plaintiff was also given a "Delegation of Authority" (i.e., named as the contact person), on numerous occasions over the years by different managers. (Exhibit 20 to Rec. Doc. 62). Many of the individuals who gave Plaintiff these designations and awards are individuals whom Plaintiff claims discriminated against him.[16]

---

and chill individuals from coming forward in the EEO process." *Id.*

       LMC notes that being designated as a "temporary acting" manager is different from a person being named "acting manager" to fill a management vacancy. Indeed, a "temporary"designation does not result in a pay raise; it only names an individual as a "contact"person in the actual manager's absence. Thus, LMC argues that the denial of such a "temporary" position does not constitute an adverse employment action.

[15]      Plaintiff, however, claims that despite receiving these appointments on occasions in 2005 and 2006, he was not allowed to perform the actual duties of the job. (Rec. Doc. 73, p. 2; Exhibit 45 to Rec. Doc. 62 (i.e., the 2006 "withdrawn" Charge of Discrimination).

[16]      Angelo Greconia is one of the individuals who Plaintiff claims discriminated against him based on his race, national origin, and religion at LMC.  (See Exhibit 10 to Rec. Doc. 62, No. 1).  Specifically, Greconia appointed Plaintiff as the contact person on numerous occasions. (Exhibits 11 and 20 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, p. 46). Greconia also nominated Plaintiff for a Spot Award for his efforts on press line removal, chose him as the lead on the Bellows Heater project, and placed Plaintiff  in the running for a Team award for that work. (Exhibits 11 to Rec. Doc. 62).

       Fulvio Manto is another individual Plaintiff claims discriminated against him based on his race, national origin, and religion at LMC.  (See Exhibit 10 to Rec. Doc. 62, No. 1).  Manto gave Plaintiff a delegation of authority, was involved in having Plaintiff  named a CPE on certain parts, and placed him in charge of Change Summaries for ET hardware.  (Exhibit 18 to Rec. Doc. 62).

       Similarly, Mark Javery placed Plaintiff in charge of the group on occasion in his absence. (Exhibits 20 and 50 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, pp. 45-46).  Leed Colon, another individual whom Plaintiff claims discriminated against him, was the Design Manager before Greconia.  He also named Plaintiff as the contact person. (Exhibit 20 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, pp. 46-47). Alan Listemaa, yet another individual whom Plaintiff claims discriminated against him, recalls promoting Plaintiff from a labor grade 45 to a labor grade 47.

Further, Plaintiff admits to being designated Task Lead on numerous projects. (Exhibit 42 to Rec. Doc. 62, pp. 48-58). Plaintiff also admits to being named a CPE as to various parts ("hardware") at least "six or seven" times. (Exhibit 42 to Rec. Doc. 62, p. 57). In fact, Plaintiff concedes that not all staff engineers are named CPEs. (Exhibit 42 to Rec. Doc. 62, p. 64). Finally, Plaintiff admits being named contact person for various vendors. (Exhibit 42 to Rec. Doc. 62, pp. 63-64). Thus, by Plaintiff's own admissions, he has received on numerous occasions the types of "high visibility" assignments that he claims in this lawsuit he was denied.

In opposition, Plaintiff argues that LMC's records confirm his claims of unfair and disproportionate merit increases and performance ratings on many occasions and also the inconsistency in getting the labor grade 4. In that respect, while Plaintiff admits that Alan Listemaa recommended him for the E4 promotion, he complains that he did so "after eighteen years, while others in [his] department got E4 grades in less than ten years, with some employees achieving E4 grade promotions in seven years. (Exhibit 4 to Rec. Doc. 73).

LMC notes in its Reply that, importantly, Plaintiff was promoted to Labor Grade E-4 in 1999. (Exhibit 9 to Rec. Doc. 62). Thus, LMC asserts that there is no claim in his lawsuit or in any EEOC charge related to the time it took him to become an E-4. Plaintiff clarifies in his Sur-Reply that his arguments regarding the length of time for the labor grade promotion are made not as additional claims for damages but as evidence of discriminatory animus on the part of LMC. (Rec. Doc. 79, p. 5).

The Court notes that Plaintiff does not contest LMC's assertions that he has, on occasion, received such "high visibility" assignments. Indeed, Plaintiff did not attempt to dispute the fact that

_____

(Exhibit 13 to Rec. Doc. 62).

18

he has been named the "temporary" acting manager or contact person, in the absence of the manager, on *numerous* occasions. He does not dispute that he has been named a CPE.  He does not dispute that he has been named Task Lead on at least seven projects.  He does not dispute that he has been named the contact person for various vendors.  The Court sees no merit in Plaintiff's claims that he did not receive *enough* of these "high visibility" assignments.  The fact that Plaintiff is a Muslim who was born outside of the United States does not translate into him being entitled to receive *all*, *most*, or even *more* of such so-called "high visibility" assignments. Such is not what the law requires.  "Although Title VII protects employees against racial discrimination in the terms and conditions of employment, it does not afford minorities special preference or place upon the employer an affirmative duty to accord them special treatment." See *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).  Thus, for these reasons, if this claim was not time-barred, it would be dismissed.

2.     **Allegations in Plaintiff's Complaint That Arguably Do Not Appear in Either the July 21, 2009 Charge or the April 29, 2010 Charge**

In the Complaint, Plaintiff alleges that he was discriminated against, beginning in 2001, as to "overall performance ratings" and "has been paid less than similarly situated Caucasian-American co-workers with both similar experience and skills and less experience and skills" (Rec. Doc. 1, ¶4). LMC notes that Plaintiff's July 2009 EEOC Charge (which focused only on the September 2008 non-promotion) made no mention of discrimination regarding pay or performance ratings (Exhibit 1 to Rec. Doc. 62). Similarly, Plaintiff's April 29, 2010 Charge makes no mention of performance ratings and no mention of discriminatory pay practices. (Exhibit 2 to Rec. Doc. 62).  Thus, LMC asserts that these claims should be dismissed because Plaintiff has failed to exhaust the

administrative remedies before the EEOC on these claims.

Again, Plaintiff asserts that because there is not a lot of room to write the details of all promotions on the EEOC form, he was told by the EEOC investigator that he would be allowed to supplement the facts by email. Plaintiff claims to have emailed additional facts relative to pay and performance ratings to the EEOC on Monday, September 28, 2009. (Exhibit 18 to Rec. Doc. 73).

In its Reply, LMC notes that, unlike the EEOC intake questionnaire, Plaintiff's email was not completed under penalty of perjury. LMC also notes that it appears to be dated "10/23/2009", in the left corner top.  However, whether it was sent in late September of 2009 or in late October of 2009 is of no moment.  What DOES matter is that the EEOC charge which the email is allegedly meant to supplement is dated July 21, 2009 (at the earliest, two months prior to the "supplement" being sent).  Further, LMC  was asked for information by the EEOC on July 21, 2009. (Exhibit O to Rec. Doc. 76)  Still further, LMC's response to the EEOC was sent in on September 24, 2009 - before Plaintiff allegedly supplemented his Charge.  (Exhibit G to Rec. Doc. 76).

Plaintiff clarifies in his Sur-Reply that his arguments regarding unequal pay and performance rating are made not as additional claims for damages but as evidence of discriminatory animus on the part of LMC. (See Rec. Doc. 79, p. 5).

This Court agrees with LMC that Plaintiff has failed to exhaust his administrative remedies as to these claims, and for that reason, does not reach the merits. Indeed, it is well-settled that before a plaintiff can bring an action in federal court under Title VII, he must first exhaust available administrative remedies. See 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir.2002); *Reed v. Northrop Grumman Ship Sys. Inc.*, No. Civ.A. 04-1214, 2004 WL 2115596, at *1 (E.D.La. July 15, 2002). Title VII's exhaustion requirement is satisfied only if

a plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. *Taylor*, 296 F.3d at 378-79 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir.1996)). Failure to comply with this requirement will result in dismissal of a plaintiff's claim. See *Reed*, 2004 WL 2115596, at *2.

Here, Plaintiff failed to include his discrimination claims relating to performance ratings and pay in either his July 21, 2009 Charge or his April 29, 2010 Charge. The Court concludes that Plaintiff's alleged "supplement", sent two months *after* the charge was signed and days *after* LMC had responded to the 2009 charge does not expand the 2009 charge. Thus, Plaintiff had not complied with Title VII's exhaustion requirement as to those claims, and such claims are hereby dismissed.

### 3.   Plaintiff's September 2008 Failure to Promote Claim

Notably, and unlike the previous claims discussed herein, this claim is properly and timely before the Court.

Here, LMC does not expressly dispute that Plaintiff can establish a prima facie case[17] as to this claim.[18] Instead, LMC focuses on arguing that it has set forth a legitimate nondiscriminatory

---

[17]   Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent direct proof of discrimination, a plaintiff may assemble proof via circumstantial evidence using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff can establish a prima facie case of discrimination if he proves that 1) he was a member of a protected class; 2) he was qualified for a particular position; 3) he suffered an adverse employment action (i.e., was not promoted); and 4) the position was filled by a person outside of the plaintiff's protected class. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir.2007). However, if the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to Plaintiff to present substantial evidence that the employer's reason was pretext for discrimination. *Id.* A reason is pretextual if it is false, "unworthy of credence," or otherwise unpersuasive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[18]   LMC does note that Plaintiff's personal opinion about his own alleged qualifications is not sufficient to carry his burden of proving a prima facie case of discrimination as to this claim. *Deines v. Tex. Dept. of Protective and Regulatory Services*, 164 F. 3d 277, 282 (5th Cir. 1999). Indeed, Plaintiff and/or his counsel have a

reason for promoting Javery (including his education as well as his performance during the interviews). LMC notes that a panel interviewed Plaintiff and two other candidates who met the qualifications, and ranked them on certain core competencies.  (Exhibits 9, 17, 28-31, 34 to Rec. Doc. 62).  Plaintiff conceded that there were only two panel members who knew him or were associated with the Michoud facility, where Plaintiff worked.[19] (Exhibit 42 to Rec. Doc. 62, pp. 118-119). The same questions, which were provided prior to the interviews,  were asked of all three individuals. (Exhibits 9, 17, 47, and 48 to Rec. Doc. 62; Exhibit 42 to Rec. Doc. 62, pp. 112-114, 118).   The panel members unanimously gave Plaintiff lower rankings in the competency categories.[20] (Exhibits 17, 28-31, 34).  The panel unanimously selected Javery, an African-American male. (Exhibit 34 to Rec. Doc. 62).   Moreover, each of the panel members have attested that no discrimination occurred against Plaintiff in this decision.  (Exhibits 17 and 28-31 to Rec. Doc. 62).

Further, LMC argues that Plaintiff has no evidence of pretext or intentional discrimination. LMC notes that, in addition to the panel's determination that Javery interviewed better than Plaintiff,

---

very high opinion of Plaintiff's personal accomplishments.  In the Opposition to this motion, Plaintiff's counsel states:

> In February 2003 the Columbia space shuttle disintegrated during re-entry. Masoodi is largely personally responsible for one of six critical "fixes" NASA demanded before the shuttle program achieved "return to flight" (RTF) status.... It is fair to say that Mr. Moin Masoodi has done as much as any other engineer in America to return the U.S. space shuttle to flight status.

(Rec. Doc. 73, pp. 1-2).

[19]     Notably, when asked how the panel members would have known his religion, Plaintiff testified that he assumed they could tell because of his name. (Exhibit 42 to Rec. Doc. 62, pp. 123-124).

[20]     The Competency categories included "Drive Innovation", "Develop Enduring Relationships", "Build Organization Talent", "Align Performance for Success", "Drive execution", and "Be Accountable".  (Exhibit 34 to Rec. Doc. 62).  While Plaintiff claimed in his discovery responses that he did not know what competencies were used to rate those interviewed  (See Exhibit 37 to Rec. Doc. 62, Nos. 22 and 24), in his deposition, Plaintiff admitted he knew which competencies were to be used, and that he would be evaluated using those competencies. (Exhibit 42 to Rec. Doc. 62, pp. 120-121).

while Plaintiff had Bachelor of Science degree ("B.S."), Javery had both a B.S. *and* a Master of

Business Administration degree ("M.B.A."). (Exhibit 49 to Rec. Doc. 62). LMC contends that in

the context of the management position being sought, the additional management degree was a

significant factor in the panel's ultimate determination.

Moreover, LMC argues that Plaintiff has no evidence to prove any intent to discriminate

against him in the selection of Javery. Plaintiff testified that he "cannot say for sure" if his race,

religion or national origin was a factor in his non-selection. (Exhibit 42 to Rec. Doc. 62, p. 122).

He further testified as follows:

> Q.    Do you know what factors the committee members
>        considered in choosing Mark Javery over you for this job?
>
> A.    According to the chart [Exhibit 34 to Rec. Doc. 62], I think
>        they are saying that his answers were better.

(Exhibit 42 to Rec. Doc. 62, p. 124).

In opposition, Plaintiff now argues that he was the only "technically qualified" person who

applied for the job. (Rec. Doc. 73, p. 2). Plaintiff asserts that according to LMC's published

promotion policy, he was the only qualified applicant for the level 5 design engineering manager

position filled in 2008. Plaintiff notes that the "technical must requirements" provided for a

"minimum of ten years relevant experience." (Exhibit 7 to Rec. Doc. 73). Plaintiff notes that he has

been working directly in the electrical and propulsion design department since 1981. (Exhibit 2 to

Rec. Doc. 73). Plaintiff further argues that all of his experience with LMC is in space vehicle launch

design. He claims that not only did he meet all the published requirements, "he easily exceeded

them all." (Rec. Doc. 73, p. 12). Plaintiff argues that a "discriminatory animus" is evident from

LMC's predisposition "to overlook his superior qualifications and make exceptions for [Plaintiff]'s

23

technically inferior, non-Muslim competitors."  (Rec. Doc. 73, p. 12).

Plaintiff asserts that the panel used his evaluations and assignment history information during the selection process for this promotion. In this regard, he asserts that "discriminatory animus" is also shown in the comments of LMC's Director of Engineering, Fulvio Manto, who reported in an internal investigation following Plaintiff's initial (withdrawn) 2006 EEOC Charge that Plaintiff "does not demonstrate aggressiveness nor is he proactive" (i.e., "seeing projects through to completion, or being responsible for projects, and finding solutions"). (Exhibit 10 to Rec. Doc. 73). Plaintiff takes issue with these statements and notes that his competency ratings in those categories were "outstanding" (equivalent to a "1" rating) from 1993 through 2001.[21]  Following September 11, 2001, Plaintiff asserts that his  competency ratings in certain categories "suddenly and inexplicably changed" to "successful contributor" (equivalent to a "3" rating) and have remained consistent at that level despite that, according to Plaintiff, "some of his accomplishments have played a crucial role in bringing the shuttle program to RTF (Return to Flight)." (Rec. Doc. 73, p. 13).

Further, Plaintiff notes that Richard Smith, on the selection board for the 2008 promotion, had reported in the same internal investigation that Plaintiff's "presentations are okay" and that "he gets the point across." (Exhibit 12 to Rec. Doc. 73). Smith stated that Plaintiff "reads from his notes and charts well and can respond to technical questions." *Id.* Plaintiff takes issue with these statements as well, arguing that "[r]eading from notes and charts in a technical presentation is a standard practice at [LMC]."  *Id.* Plaintiff refers to Smith's statements as "damning with faint praise" and argues that they show "the existence of an impermissible motive in Richard Smith, a key

---

[21]    While Plaintiff cites the Court to Exhibit 11 to Rec. doc. 73 to support this statement, oddly, many of the performance appraisals included are for employees *other than Plaintiff.*

member of the selection board." (Rec. Doc. 73, p. 13).

Plaintiff argues that he was "clearly better qualified" than Javery, which he argues shows pretext for discrimination. (Rec. Doc. 73, p. 14).  In the case of the two non-Muslim applicants, Barkman and Javery, Plaintiff argues that the selection grid falsely states that each satisfied the technical requirement.  Plaintiff notes that Javery (a Baptist) had, at most, only eight years of relevant experience instead of the un-waivable minimum requirement of ten years.[22] (Exhibit 6 to Rec. Doc. 73, p. 6; Exhibit 13 to Rec. Doc. 73).  Plaintiff contends that this experience is "simply not relevant" to the "experience" for which the job allegedly called. (Rec. Doc. 73, p. 15).  Plaintiff contends that Javery's records cannot show that he has achieved the level of experience anywhere near that of Plaintiff, who had 27  years in space launch experience. Plaintiff ultimately complains that, Javery, a native born Southern Baptist, received the job over him, a Muslim.

As for Plaintiff's argument that Javery did not have the requisite 10 years of experience required for position, LMC notes that Plaintiff has offered no supporting evidence for this "opinion." Javery affirmatively stated that "as of September 2008 he had at least 10 years of technical experience in the specification and/or design of launch vehicle electrical or propulsion systems" (Exhibit 50 to Rec. Doc. 62). Despite Javery's affirmation, Plaintiff asserts that Javery's resume and bio-data show that he was with the facilities departments until 2000, so he could not have been

---

[22]     Plaintiff argues:

> Javery's resume clearly states that, up through 2000, while assigned to the facilities and tooling group, he worked on scheduling, resource allocation, vendor coordination and construction verification for non-spacecraft projects. Through 2000, Mr. Javery, in effect, kept the lights on while other engineers specified and designed the shuttle tank: he worked in the tooling and facilities groups through 2000, after which point he began working on the "flight side for flight instrumentation engineer."

(Rec. Doc. 73, p. 15; Exhibit 6 to Rec. Doc. 73, pp.15-16).

gaining experience in the specification and/or design of launch vehicle electrical or propulsion systems. (Exhibit M to Rec. Doc. 79).

Plaintiff further notes that Barkman similarly only began to acquire what Plaintiff deems to be "relevant" experience in 2003 when he became a staff design engineer. (Exhibit 14 to Rec. Doc. 73).  Before then, Barkman was with facilities engineering, which Plaintiff claims is unrelated to the specification and design of space vehicles.

Next, Plaintiff asserts that the promotion selection process was "sprinkled with irregularities".  (Rec. Doc. 73, p. 2).  According to LMC's "Directive-Selection of Coded Full Spectrum Leaders", the selection board chairperson must not be the hiring manager. (Exhibit 8 to Rec. Doc. 73, p. 335). Plaintiff notes that, here, the selection board chairperson was Don Tracy. (Exhibit 15 to Rec. Doc. 73).  Plaintiff cites to his sworn declaration to support his position that Javery reports to Tracy, the chairperson and hiring manager. (Exhibit 3 to Rec. Doc. 73, ¶9).

LMC, on the other hand, offers evidence to support its position that Plaintiff's assertion is false.  LMC notes that Smith, at Michoud, was the hiring manager.  Javery reported directly to Smith before and after his promotion. (See Exhibits A, B, C and N to Rec. Doc. 76).LMC claims that Smith screened the applicants, set up the interviews, and was Javery's manager upon promotion. (Exhibit 47 to Rec. Doc. 62; Exhibit G to Rec. Doc. 76, pp. 2-3; Exhibit I to Rec. Doc. 76, pp. 113-114; Exhibits J and K to Rec. Doc. 76).  In a Sur-Reply filed by Plaintiff, he points to the "Requisition details" for the September 2008 promotion that suggest that the position reports to Tracy.  (Exhibit B to Rec. Doc. 79).

Plaintiff further argues that another example of LMC disregarding its own procedures in this promotion selection process was the implementation in this particular instance of what was referred

26

to as "Full Spectrum Leadership Imperatives."  Plaintiff claims that of the LMC records that he received in discovery, 12 out of 17 contemporaneous job requisitions elsewhere in the Technical Operations had no Full Spectrum Leadership language in them. (Exhibit 19 to Rec. Doc. 73). Plaintiff asserts that the Full Spectrum Leadership scheme is subjective and enables management to justify whoever they select for a particular position, regardless of their technical qualification, experience, and accomplishments. Plaintiff argues that because the Full Spectrum Leadership scheme is utilized in only some managerial situations, its use in this instance, which involves a managerial promotion where the only qualified candidate is a Muslim, constitutes pretext for intentional discrimination.

In its Reply, LMC disputes this assertion that notes that Full Spectrum was used in 16 out of 17 job requisitions (Exhibit M to Rec. Doc. 76). However, in his Sur-reply, Plaintiff argues that his assertion about recent promotions where the Full Spectrum Leadership language was not included in the job requisitions is indeed accurate. He points to Exhibit 19 to Rec. Doc. 73, which he claims shows 17 job requisitions, and 12 of those 17  had no Full Spectrum Leadership language.

Here, the legitimate reason proffered by LMC for not promoting Plaintiff was that there was a better candidate (with more education and who interviewed better). The Fifth Circuit has acknowledged that "choosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision." *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004). Plaintiff argues that he was clearly a better candidate than the individual ultimately selected. However, the evidence before the Court does not indicate that Plaintiff  was clearly better qualified than Javery.  See *Johnson v. David Wade Correctional Facility*, 2010 WL 5029561, *2 (5th Cir. Dec. 2, 2010).  Indeed, in addition to the

panel's determination that Javery interviewed better than Plaintiff, Javery also had an additional degree (an M.B.A.), which Plaintiff did not have, and which was a significant factor in the panel's ultimate determination.  However, even if Plaintiff and Javery had had similar degrees, the Fifth Circuit has held that  merely "[s]howing that two candidates are similarly qualified does not establish pretext." *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir.2002).

As for Plaintiff's arguments that Javery, a native born Southern Baptist, received the job over him, a Muslim, the Fifth Circuit has held that "a plaintiff cannot merely rely on his subjective belief that discrimination has occurred" to demonstrate pretext. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997). "[B]ald assertions of ... discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against [plaintiff]." *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) .  Indeed, Plaintiff testified that he "cannot say for sure" if his race, religion or national origin was a factor in his non-selection.  (Exhibit 42 to Rec. Doc. 62, p. 122). He further admitted during his deposition that the panel chose Javery over him because "[a]ccording to the chart [Exhibit 34 to Rec. Doc. 62], I think they are saying that his answers were better."  (Exhibit 42 to Rec. Doc. 62, p. 124).

Further, regarding Plaintiff's opinion about he being the only candidate with the required amount of "relevant experience" (see Exhibit 7 to Rec. Doc. 73), the Court notes that it is just that: *opinion*. An employee's subjective belief that he deserved a promotion, without more, is insufficient proof of pretext to raise a genuine issue of fact regarding an employer's motivation.  *Hamilton v. Texas Dept. Of Transp.*, 85 Fed. Appx. 8, *6 (5th Cir. Jan. 6, 2004).  Here, it is not up to Plaintiff to determine what experience was "relevant"; it was up to the selection panel, who unanimously selected Javery over Plaintiff.  An individual's subjective belief that he is more qualified for the

position is insufficient to establish a material question of fact. See *Nicols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

Regarding the comments by Manto and Smith that Plaintiff claims show "discriminatory animus"[23], the Court finds that such statements are barely even negative in nature. To the extent that such statements are or could be considered negative, no law prohibits an employer from offering constructive criticism about an employee who happens to be a minority. Although Title VII protects employees against discrimination in the terms and conditions of employment, it does not afford minorities special preference or place upon the employer an affirmative duty to afford them special treatment (i.e., only say positive things about them and their work). See *Williams*, 656 F.2d at 129, *cert. denied*, 455 U.S. 943. Indeed, an employee's subjective belief about an employer's alleged animus is not, however, alone sufficient to prove discriminatory intent. See *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

Again, to be clear, to the extent Plaintiff attempts to use his own qualifications and experience as evidence of discriminatory intent[24], he has failed to do this as well. *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 882 (5th Cir. 2003)(stating that an employee must be "clearly better qualified" to use his own qualifications as evidence of pretext).

Next, as for Plaintiff's arguments that the selection board chairperson was impermissibly also

---

[23]     Manto reported in an internal investigation following Plaintiff's (withdrawn) 2006 EEOC Charge that Plaintiff "does not demonstrate aggressiveness nor is he proactive" (i.e., "seeing projects through to completion, or being responsible for projects, and finding solutions"). (Exhibit 10 to Rec. Doc. 73). Smith reported in the same internal investigation that Plaintiff's "presentations are okay" and that "he gets the point across." (Exhibit 12 to Rec. Doc. 73). Smith further stated that Plaintiff "reads from his notes and charts well and can respond to technical questions." *Id.*

[24]     In the Opposition, Plaintiff's counsel asserts, "[i]t is fair to say that [Plaintiff] has done as much as any other engineer in America to return the U.S. space shuttle to flight status [after the February 2003 Columbia space shuttle disaster]." (Rec. Doc. 73, p. 2).

the hiring manager (i.e, Don Tracy, according to Plaintiff), it is true that Tracy was the chairperson of the selection committee.  (Exhibit 15 to Rec. Doc. 73). However, the evidence indicates that Javery reported directly to Smith before and after his promotion. (See Exhibits A, B, C and N to Rec. Doc. 76).  While Tracy may have been the manager to whom Smith ultimately reported (Exhibit B to Rec. Doc. 79), Tracy was not even located at the Michoud facility; he works in Colorado. (Exhibit 42 to Rec. Doc. 62, p. 119). Thus, this argument is without merit and fails to constitute pretext for intentional discrimination.

As for Plaintiff's argument that the Full Spectrum Leadership scheme, which he claims is subjective and enables management to justify whoever they select for a particular position, is utilized in only *some* managerial situations, the evidence reveals that the Full Spectrum scheme was used in 16 out of 17 job requisitions.  (Exhibit M to Rec. Doc. 76).  While Plaintiff attempts to refute this by pointing to Exhibit 19 to Rec. Doc. 73, the Court notes that this exhibit consists of only the first page of 17 different job requisitions.  The Court is unable to discern, from these incomplete records presently before it, that Plaintiff is correct in asserting that the Sworn Affidavit of LMC's Human Resources Business Partner, Thuy Tran, is incorrect.  Indeed, Plaintiff here "must set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e). Plaintiff must adduce affirmative evidence. See *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.  Plaintiff has failed to do so in this regard.

In sum, other than his own subjective belief, Plaintiff offers sparse evidence in support of his claim that prohibited discrimination influenced LMC's promotion decision.  Taken as a whole, the arguments and evidence relied upon by Plaintiff fail to create a fact issue as to whether LMC's nondiscriminatory reasons for failing to promote him in 2008 were mere pretext for race-based

discrimination. Thus, this claim is hereby dismissed.

### 4. Plaintiff's Discrimination Claims Based on Race and Age

LMC notes it its Reply that although Plaintiff alleged race discrimination in his lawsuit, he makes no reference to it and does not offer any evidence to support it in his Opposition. Similarly, in its Motion, LMC argues that Plaintiff had not properly set forth an age discrimination claim. Plaintiff did not address this argument in his Opposition; he offered no evidence to support the claim. Thus, both Plaintiff's age and race discrimination claims are deemed abandoned and are hereby dismissed.

## III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. 62) is **GRANTED** in its entirety. To be clear, to the extent that LMC requests that this Court award costs and attorney's fees to it for having to conduct discovery and file the instant motion to defeat claims it asserts are frivolous (See Rec. Doc. 62, p. 20), the Court declines to do so.

New Orleans, Louisiana, this 3rd day of March, 2011.

_____
KURT D. ENGELHARDT
United States District Judge

31